UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

HANS KASCHURA,

Plaintiff,

- against -

TNG RETAIL SERVICES, LLC,

Defendant.
------------------------------------------------------------------------X

Case No. 21-cv-6241

COMPLAINT

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, Hans Kaschura ("Plaintiff" or "Mr. Kaschura"), by his attorneys, FILIPPATOS PLLC, hereby complains of Defendant, TNG Retail Services, LLC ("TNG" or "Defendant"), upon personal knowledge, as well as information and belief, by alleging and averring as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for violation of his rights under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.; the New York State Fair Credit Reporting Act ("NY FRCRA"), N.Y. Gen. Bus. Law § 380 *et seq*.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*.; and Article 23-A of the New York State Correction Law, N.Y. Corr. Law § 750 *et. seq*. ("Correction Law").

2. Plaintiff has a criminal history that in no way interfered with his employment for TNG. In fact, TNG performed a background check before hiring Plaintiff, hired him, and promoted him less than one year later.

3. After a customer supposedly recognized Plaintiff, TNG – upon information and belief – performed another background check and then terminated Plaintiff's employment on the basis of his criminal record.

4. As set forth herein, TNG failed to comply with federal law, 15 U.S.C. § 1681 *et*

*seq.*, governing the procurement and use of consumer reports for employment purposes because it failed to obtain Plaintiff's written permission to perform a criminal background check and provide stand-alone disclosure that a background check may be obtained for employment purposes. TNG failed to notify him in writing of its intent to take a pre-adverse action based on any part of the background report, as well as provide him with a copy of the report, a summary of his rights under the FRCA, and an adverse action notice based on information in the report.

5. TNG failed to comply with the NY FCRA by failing to provide Plaintiff with a copy of Article 23-A of the Correction Law.

6. TNG violated the NYSHRL, N.Y. Exec. Law § 296(15), and Correction Law §§ 752 and 753, by discriminating against Plaintiff and failing to evaluate the required statutory factors to determine the suitability of his continued employment, and thereafter unlawfully terminated Plaintiff's employment because of his prior criminal record.

7. TNG also violated Correction Law § 754 by failing to provide a written statement setting forth the reasons for his termination.

**STATUTORY BACKGROUND**

8. It is the "public policy of [New York State]" to "encourage the licensure and employment of persons previously convicted of one or more criminal offenses." N.Y. Correction Law § 753(1)(a).

9. "The State [of New York] has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and [] the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a

free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants." N.Y. Exec. Law § 290.

10. In enacting the FCRA, Congress was particularly concerned that consumer reporting agencies "exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by requiring consumer reporting agencies to operate "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id*. at § 1681(b).

11. The FCRA defines a "consumer report" to include any background report for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

12. The NY FCRA defines a "consumer report" to include any background report for employment purposes. *See* N.Y. Gen. Bus. Law § 380-a(c).

**THE PARTIES**

13. TNG is a limited liability company organized under the laws of the State of Delaware, is licensed to do business in the State of New York, and, upon information and belief, regularly conducts business in the Southern District of New York.

14. At all times relevant to this Complaint, TNG has been an employer as that term is defined in the NYSHRL, a private employer as that term is defined by Article 23-A, and a person as that term is defined by the FCRA, the NY FCRA, and the NYSHRL.

15. Plaintiff is an adult citizen of the United States of America and resident of Putnam County within the State of New York.

16. Plaintiff has two criminal convictions incurred in September 2007.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and 1367.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL ALLEGATIONS

### TNG Hires Plaintiff as a Merchandiser, and Plaintiff Performs So Well That TNG Promotes Him to Assistant Team Lead Less Than One Year Later

19. Plaintiff, who has experience working in warehouses, interviewed with TNG Hiring Recruiter Ann Townsend in May 2020. Ms. Townsend told Plaintiff that Company policy requires performing a criminal background check only for offenses occurring within the past decade. However, Plaintiff volunteered that he is a registered sex offender in New York State, and his convictions are older than ten years. Ms. Townsend stated that a criminal background check would be performed and that she did not see any problem with his hiring.

20. Indeed, shortly thereafter, TNG hired Plaintiff as a Merchandiser at a salary of $14 per hour and assigned him to work at eight Acme grocery stores in upper Westchester, Putnam County, and lower Dutchess Counties. At that time, Plaintiff's direct supervisor was Team Lead Giuseppe Siragusa. Plaintiff's job responsibilities consisted of reading plan-o-grams, constructing store displays, rearranging shelves and displays, removing and replacing products, and other similar tasks.

21. It is obvious from the foregoing that sometime thereafter in 2020, TNG received the results of the criminal background check it had performed on Plaintiff and deemed those results to be satisfactory and supportive of his continued employment by TNG.

22. On January 2, 2021, Plaintiff was promoted to Assistant Team Lead and received a salary increase to $16 per hour. As part of his promotion, Plaintiff now supervised four to six Merchandisers. Starting in early January 2021, Mr. Siragusa took a leave of absence, and Plaintiff reported to the new Team Lead, Klaivert Lluka.

**After a Customer Supposedly Recognizes Plaintiff as a Registered Sex Offender, TNG Abruptly Suspends Him, Performs an "Investigation" and a Criminal Background Check Without His Written Permission, and Fails to Notify Him in Writing of Its Intent to Take an Adverse Action or Provide Him With a Copy of Article 23-A or a Statement of his Rights Under the FCRA – in Violation of the FCRA and the NY FCRA**

23. At all times he was employed by TNG, Plaintiff performed his job responsibilities flawlessly – with no customer complaints or disciplinary issues – and, as shown by his promotion, TNG was satisfied with his job performance.

24. On April 8, 2021, however, when he returned home from work, Plaintiff received a phone call from Virginia Allen of TNG's People Department, stating that a customer at the Acme location in Patterson, New York had complained to an unnamed manager that the customer recognized Plaintiff as a registered sex offender. Because Plaintiff was wearing a mask throughout his workday, as required by CDC guidelines, this alleged recognition in and of itself seemed dubious. Moreover, Plaintiff's new supervisor, Mr. Lluka, had previously bragged to Plaintiff, in sum and substance, "I can get rid of anyone I want."

25. What TNG did as a result of this alleged customer recognition was legally dubious to say the least. Ms. Allen informed Plaintiff that, notwithstanding the fact that he had previously passed the criminal background check, TNG had performed when he was hired, the Company was suspending him with pay in order to "investigate his background" yet again. Plaintiff understood this comment to mean that TNG was going to perform another criminal background check, but he never expressly or impliedly authorized any such action.

26. Ms. Allen told Plaintiff that the Division Manager, Mike Silverstein, would speak to Mr. Lluka and tell him not to say anything to anyone regarding the reason for Plaintiff's absence – thereby implying that Mr. Lluka already knew the reason for Plaintiff's absence. Plaintiff asked Ms. Allen if it would be possible for TNG to transfer him to another local district team. Ms. Allen stated she did not think that would be possible.

27. Also on April 8, 2021, the TNG "People Department" emailed Plaintiff, copying Ms. Allen and Mr. Silverstein, subject "Suspension Notification – Hans Kaschura." This email stated as follows:

> Dear Hans Kaschura:
>
> The purpose of this letter is to confirm your verbal suspension on 4/8/2021. This letter confirms that you are suspended from work as of 4/8/2021 until further notice while an investigation is done into the following concern:
>
> - Background Screen Issue
>
> We can change or add to this concern as appropriate in light of our investigation.
> Your employment is continuous during your suspension and your terms and conditions of employment continue to apply. We will not keep you suspended for longer than is necessary for us to carry out the investigation and decide on action to be taken, if appropriate. We can lift the suspension at any time.
> When our investigation is concluded, you will be advised of further action, if any, that may be contemplated regarding your employment with the TNG Retail Services.
> You are not required, but highly encouraged to respond with a statement addressing the aforementioned concern. Statements should be submitted using the link below, or by replying to this email.
> Team Member's Statement
> If you choose not to, we will be forced to make a decision regarding your employment based on the information we currently have on hand. Please submit your statement no later than noon on Monday 4/12/2021.
> If you have any questions, comments or concerns you are welcome to reach out to People@TNGRetail.com
> Thank you,

> Kathryn Cornell
> People Department Coordinator /
> Region 200 People Partner
> TNG Retail Services
> o: 925-443-4147 x4056
> f: 925-400-6566
> www.tngretail.com

28. In response to this email informing him of his unlawful suspension, Plaintiff wrote:

> I would like clarification on why this is being investigated.
> Also, when I was going throughout the hiring process I volunteered the information of my criminal past prior to the background check to the hiring recruiter and was told it would not be an issue. Which I passed.
> As well as.
> I was told by HR that this formentioned issue is my personal business. I [] do not have to discuss that with anyone of the employees on the team. My crime is over 10 years old I was convicted January 8th 2008.
> Sincerely,
> Hans Kaschura

29. Later in the day, on April 8, 2021, Plaintiff received an email from Ms. Allen, copying Mr. Silverstein and the People Department, with the subject line, "TNG Retail Services – Compliance Department Discussion Recap," which stated:

> Hi Hans,
>
> Thank you for taking my call earlier. As a recap, please do not contact anyone from your team to discuss this concern. Mike or another member of your management team will address your team regarding your absence on Monday.
>
> As we discussed, you are being placed in a suspended (with pay) status while we conduct an internal investigation. You should be receiving a communication from the People Department regarding that suspension. You do have the opportunity to provide a statement on your behalf, and I highly encourage you to do so. I anticipate concluding the investigation and recommending a resolution by Monday, but if not, you will be notified either way.

> Please feel free to reach out to me directly with any questions and/or concerns.
>
> Stay safe…be well!
>
> Virginia Allen, MBA, PHRca
> Director of People Compliance
> TNG RETAIL SERVICES
> O: 925.443.4147 x4048
> www.tngretail.com
> #ICare4UrSafety #ComplianceMaestro

30. On April 10, 2021, Mr. Silverstein emailed Plaintiff, copying the People Department, to inform him that he was suspended with pay while the People Department "investigate[s] the concern from Thursday." Plaintiff thanked Mr. Silverstein for letting him know, but also stated: "This greatly concerns me and I hope we can move forward by putting this behind us."

31. On April 12, 2021, having received no response from Ms. Cornell, Plaintiff emailed the People Department: "Hello Kathryn, I would like to know any updates regarding the investigation. Also, what exactly is being investigated?"

32. Plaintiff also emailed Mr. Silverstein on April 12, 2021, asking for an update on the investigation. In response, Mr. Silverstein told him to "reach out to Virginia going forward on this." Plaintiff then emailed Ms. Allen for an update regarding the investigation but received no response.

33. On April 13, 2021, Plaintiff received an email from the People Department, copying Virginia Allen, subject Status Update Re: Suspension. This email stated:

> Hello Hans,
>
> I hope this email finds you well!
>
> First, thank you for your patience in this matter as we conduct our investigation regarding the recent event that took place last week

> regarding your background. Currently we are still discussing and investigating your case to reach a resolution. In the interim, we are asking for your participation and ask that you provide a better statement as to the nature of your offense. Your statement will be taken into consideration and will aid us in drawing near to a resolution.
>
> Please submit a statement no later than Wednesday, April 14, 2021 at 12 PM (PST) to people@tngretail.com
>
> If you have any questions, comments, or concerns, please do not hesitate to reach out to myself or Virginia Allen.
>
> Thank you,
>
> Alexandra Millan
> Manager of People Development
> #EMPOWER&ENGAGE #CelebrateOurDifferences
> O: 925-443-4147 x4055
> F: 925-443-4192

34. Plaintiff responded to this email stating that had a "few questions regarding [his] case" and asking if Ms. Millan could call him.

35. Although Plaintiff had no legal obligation to provide TNG with a statement regarding his offense, he provided an oral statement. Plaintiff and Ms. Cornell spoke on April 13, 2021, and afterward this conversation, Plaintiff received the following email from the People Department:

> Hi Hans,
>
> Thanks for taking a few minutes to speak with me. I wanted to send over a quick recap of the notes I took during our conversation. Please let me know if I misconstrued anything. We will have further information including next steps for you shortly.[1]
>
> When I first got the phone call notifying me that I was being suspended, I told Virginia that I told the recruiter that I was a sex offender and she told me that it would not be an issue. Her name was Ann Townsend.

[1] As stated, this email does not quote Plaintiff but instead reflects Ms. Cornell's notes.

> This incident happened when I was a teenager. I'm 35 now and I want to move on with my life and be given the opportunity to do so.
> Regarding a member of the community recognizing me, I have a mask on the entire time at work. I don't know how they can recognize me. We hadn't been there in forever, and then the first time we go into the store someone recognizes me? Whoever she told about me is offended by me being there. I've never not once raised a single issue at this job though.
> I was convicted January 2008 for sexual misconduct with a minor in the 2nd degree. I was 18 at the time. I have less than a year of parole left.
> The only reason they haven't let me go off parole is because they can't - sex offenders can't be let off parole early. I was going through therapy, and am not any longer because they determined that I am a productive member of society and it is no longer needed. I have a wife and a job and I just want to move forward with my life.
> Regarding paid suspension: I work 8 to 10 hours a day Monday through Thursday. I average 70 to 80 hours a week. Once in a while we get permission to work a Friday, but most of the time Monday through Thursday.
>
> Thank you,
>
> Kathryn Cornell
> People Department Coordinator /
> Region 200 People Partner
> TNG Retail Services
> o: 925-443-4147 x4056
> f: 925-400-6566
> www.tngretail.com

36. Plaintiff subsequently emailed Ms. Cornell, "I average 70 to 80 hours every two weeks." Ms. Cornell acknowledged the error.

37. ***At no time during this alleged "investigation" did TNG obtain Plaintiff's written permission before performing a background check, provide stand-alone disclosure that a background check may be obtained for employment purposes, notify him in writing of its intent to take an adverse action based on any part of the report prior to doing so, and provide him with a copy of the background report and a summary of rights under the FCRA before***

***taking adverse action, in violation of the FCRA. At no time during this alleged "investigation" did TNG provide Plaintiff with a copy of Article 23-A of the New York State Correction Law, in violation of the NY FCRA.***

**TNG Fails to Provide Plaintiff With Adverse Action Notice, Fails to Comply with the Correction Law in Violation of the NYSHRL, Discriminates Against Plaintiff, Unlawfully Terminates Him with Overt Threats of Violence, and Attempts to Cover Up Its Unlawful Conduct With a Fraudulent Severance Agreement – Which Misstates That His Employment Ended as a Result of Elimination of His Position**

38. On April 15, 2021, TNG unlawfully terminated Plaintiff. Alexandra Millan called Plaintiff and informed him that he was terminated. Plaintiff asked why he had been terminated. Ms. Millan stated that TNG was unable to find a position for him in other districts and that Plaintiff "was not willing to travel." Plaintiff explained that he could not travel, as he was still on parole.

39. At no time did TNG provide Plaintiff with adverse action notice based on information in a background report, as required by the FCRA.

40. In an April 16, 2021, email to Plaintiff from the People Department, subject Per our Conversation – Hans Kaschura, TNG showed a shocking ignorance of New York Correction Law §§ 750-754. ***Moreover, this email contained overt, unlawful threats of violence against Plaintiff:***

> Hi Hans,
>
> Thank you again for your time today, as well as yesterday. I know the conversation was not an easy one but I appreciate your professionalism throughout the call.
>
> The purpose of my call on 4/15 was to provide an update regarding the investigation that was being conducted as a result of an incident that took place last week when a patron recognized you in a store and informed a member of the company that you were a sex offender.

I understand how upsetting this must be and you have my deepest regard as this was not the outcome that we wanted. Myself, along with the VP of HR and Director of Compliance, were working on solutions to retain you in the company. We worked with your Division Management Team and we were unable to place you on another local Reset Team as the Teams are at capacity. The second option available was Remodel but this was not an option that you could accept due to your being on parole. Unfortunately, the only option we have left is to proceed with termination. Our decision to proceed with termination was not an easy one and as previously stated was not our first choice. As a company, we would not be doing you a good service in returning you to the Team and / or the same community in which you were recognized. As you are aware the information regarding your background and registry status are available to the public and we would not be able to protect you from the possible negativity you could face from the public and / or members of the Team.

Per our conversation, you expressed concern regarding your status as a sex offender and what the exact reason was regarding your termination. The reason for termination was not due to your performance, as we received statements that held you in high regard as to your performance and yourself as an individual. The conclusion that we have come to is not based on a formal written policy but at the discretion of the company. Obviously, you met this company's background screen requirements, which is why you were hired. However, we have no control over public perception. Information regarding the offense is public knowledge and we have been advised that some patrons of the Client Retailer, as well as some of your fellow Team Members do not feel safe working with you. Additionally, we are forced to acknowledge that returning you to that environment may be unsafe for you and do not want to subject you to a potentially hostile work environment. We have a responsibility to do our due diligence in addressing the matter and taking necessary action. We have other Team Members – past and current that are sex offenders but in this rare circumstance, you were recognized by the public and with our inability to transfer you to another team (due to no available positions) we must proceed with separation.

We will classify your termination as voluntary, so as not to hinder future employment opportunities with another organization. However, we will approve any request for Unemployment Insurance. Additionally, you will be compensated for each day of scheduled hours you missed through today, along

> with a 2-week severance, as we understand how inconvenient this outcome has become.
>
> Again, this decision was not an easy one for us to make. We sincerely wish you the best in all your future endeavors.
>
> Thank you,
>
> Alexandra Millan
> Manager of People Development
> #EMPOWER&ENGAGE #CelebrateOurDifferences
> O: 925-443-4147 x4055
> F: 925-443-4192

41. On April 16, 2021, Plaintiff responded, "[m]y termination was not voluntary. I want that removed from the statement you provided.

42. ***TNG then provided Plaintiff with a severance agreement – which blatantly lied about the reasons for his separation in an attempt to cover up the unlawful termination, stating: "Your employment with the Company will end as a result of the elimination of your position effective April 20, 2021 (your "Separation Date")," and offering him $1,120 as a severance payment.***

43. Plaintiff responded that he would like seven months of severance. In response, on April 27, 2021, he received an email from the People Department, subject Hans Kaschura severance pay, reiterating the unlawful basis for his termination:

> Hi Hans,
> Thank you for reaching out and allowing clarification. The offer of a 2 week severance was not an invitation to start negotiations. It was offered simply to facilitate your separation from the company, but not meant to contradict the gravity of the basis of your termination.
>
> The fact is that you were terminated because of the additional background information shared with The People Department, but that was not revealed in [sic]. The seriousness of this additional information was significant enough to make you ineligible for hire. There was the potential for the seriousness of your past conviction to be mitigated in another role, but upon learning that it

> was not an option due to your parole, we returned to the initial basis for termination. In view of your background, allowing you to remain in your role was not an option.
>
> We respectfully accept your rejection of our offer of a two-week severance. To be extent our prior offer to pay you a severance is still in effect, such offer is hereby withdrawn. We do not intend to make any further severance offers to you. While it is unfortunate that your employment will end on these terms, we must do what is in the best interest of all vested parties and part ways.
>
> We wish you well in your future endeavors.
>
> Thank you,
>
> Alexandra Millan (she / her)
> Manager of People Development
> #EMPOWER&ENGAGE #CelebrateOurDifferences
> O: 925-443-4147 x4055
> F: 925-443-4192

44. Thus, in terminating Plaintiff, TNG ignored its obligations under the Correction Law to make an individual assessment as to whether there was a direct relationship between the conviction and the job or whether the hiring would create an unreasonable risk to property or public or individual safety under § 752 and evaluate the eight factors in § 753.

45. ***Indeed, in Alexandra Millan's April 16, 2021, email to Plaintiff, she explicitly acknowledged that the reasons for his termination had nothing to do with the criteria in Correction Law §§ 752 and 753 – and that the Company had not undertaken the necessary analysis. Thus, TNG wholly disregarded its obligations to evaluate the factors in the Correction Law and instead discriminated against Plaintiff on the basis of his criminal conviction and unlawfully terminated him in violation of the NYSHRL, N.Y. Exec. Law § 296(15).*** Ms. Millan admitted that the Company had instead terminated Plaintiff due to "public perception" and threats of violence:

> The reason for termination was not due to your performance, as we received

> statements that held you in high regard as to your performance and yourself as an individual. The conclusion that we have come to is not based on a formal written policy but at the discretion of the company. Obviously, you met this company's background screen requirements, which is why you were hired. However, we have no control over public perception. Information regarding the offense is public knowledge and we have been advised that some patrons of the Client Retailer, as well as some of your fellow Team Members do not feel safe working with you. Additionally, we are forced to acknowledge that returning you to that environment may be unsafe for you and do not want to subject you to a potentially hostile work environment.

46. Furthermore, Plaintiff asked for an explanation regarding why he was terminated, and TNG was required to provide Plaintiff with a written statement setting forth the reasons for his termination under Correction Law § 754, and how he did not satisfy the factors in §§ 752 and 753. Ms. Millan's April 16 and April 27, 2021 emails do not comply with the requirements of § 754. In short, TNG wholly disregarded its obligations under the Correction Law as if it did not exist.

**AS A FIRST CAUSE OF ACTION FOR FAILURE TO OBTAIN WRITTEN PERMISSION AND PROVIDE STAND-ALONE DISCLOSURE BEFORE PERFORMING A BACKGROUND CHECK UNDER THE FCRA, 15 U.S.C. § 1681b(b)(2)(A)**

47. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were fully set forth herein.

48. Plaintiff is a "consumer," as defined by the FCRA, § 15 U.S.C. 1681a(c).

49. The criminal background report ordered by TNG is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d).

50. TNG failed to obtain Plaintiff's written permission before ordering a background report and failed to provide stand-alone disclosure that the background check may be obtained for employment purposes, in violation of the FCRA, 15 U.S.C. § 1681b(b)(2)(A)(i) & (ii).

51. Each violation herein was a separate violation of the FCRA.

52. As a result of TNG's actions, Plaintiff was deprived of his rights.

53. TNG's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

54. In the alternative, TNG's actions were negligent, making it liable for actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**AS A SECOND CAUSE OF ACTION FOR FAILURE TO COMPLY WITH PRE-ADVERSE ACTION NOTICE REQUIREMENTS UNDER THE FCRA, 15 U.S.C. § 1681b(b)(3)(A)**

55. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were fully set forth herein.

56. TNG terminated Plaintiff's employment based at least in part on a background report.

57. TNG failed to give Plaintiff a copy of the background report and a copy of the summary of his rights under the FCRA, in violation of 15 U.S.C. § 1681b(b)(3)(A).

58. Each violation herein was a separate violation of the FCRA.

59. As a result of TNG's actions, Plaintiff has been deprived of his rights and prevented from timely and effectively contesting the adverse action.

60. TNG's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

61. In the alternative, TNG's actions were negligent, making it liable for actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**AS A THIRD CAUSE OF ACTION FOR FAILURE TO GIVE ADVERSE ACTION NOTICE UNDER THE FCRA, 15 U.S.C. § 1681m(a)**

62. Plaintiff repeats and realleges each and every paragraph above as if said

paragraphs were fully set forth herein.

63. TNG failed to give Plaintiff notice that it was going to take adverse action against him based on information in a background report, in violation of 15 U.S.C. § 1681m(a).

64. As a result of TNG's actions, Plaintiff has been deprived of his rights and prevented from timely and effectively contesting the adverse action.

65. TNG's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

66. In the alternative, TNG's actions were negligent, making it liable for actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**AS A FOURTH CAUSE OF ACTION FOR FAILURE TO PROVIDE A COPY OF ARTICLE 23-A UNDER THE NY FCRA, N.Y. GEN. BUS. LAW § 380-g(d)**

67. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were fully set forth herein.

68. Plaintiff is a "consumer," as defined by the NY FCRA, N.Y. Gen. Bus. Law § 380-a(b).

69. The background report ordered by TNG is a "consumer report" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).

70. TNG is a "user" of a consumer report within the meaning of N.Y. Gen. Bus. Law § 380-a(i).

71. TNG is a "person" within the meaning of N.Y. Gen. Bus. Law § 380-a(a), and TNG is a "firm," "corporation," or "other entity" as those terms are used in N.Y. Gen. Bus. Law § 380-g(d).

72. TNG obtained a consumer report containing information regarding Plaintiff's

criminal conviction information from a consumer reporting agency.

73. TNG failed to provide Plaintiff with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d).

74. As a result of TNG's actions, Plaintiff has been deprived of his rights and prevented from timely and effectively contesting the adverse, discriminatory action and vindicating his rights.

75. TNG invaded Plaintiff's privacy without following the law's mandates.

76. TNG's conduct was willful, making it liable for actual damages, punitive damages, and attorneys' fees and costs, pursuant to N.Y. Gen. Bus. Law § 380-l.

77. In the alternative, TNG's actions were negligent, making it liable for actual damages, and attorneys' fees and costs, pursuant to N.Y. Gen. Bus. Law § 380-m.

**AS A FIFTH CAUSE OF ACTION FOR CRIMINAL RECORD DISCRIMINATORY TERMINATION OF EMPLOYMENT UNDER THE NYSHRL, N.Y. EXEC. LAW § 296(15), AND ARTICLE 23-A OF THE NEW YORK CORRECTION LAW, N.Y. CORRECT. LAW §§ 750-755**

78. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were fully set forth herein.

79. Section 296(15) of the New York Executive Law prohibits a "person, agency, bureau, corporation or association" from discriminating against an individual by denying him or her employment "by reason of his or her having been convicted of one or more criminal offenses . . when such denial is in violation of the provisions of article twenty-three-A of the correction law.

80. As set forth in the preceding paragraph, § 296(15) of the New York Executive Law incorporates Article 23-A.

81. TNG discriminated against Plaintiff and terminated him on the basis of his

criminal conviction in violation of New York Executive Law § 296(15) and Article 23-A.

82. TNG failed to evaluate the criteria and factors in Correction Law §§ 752 and 753 and instead terminated him due to "public perception."

83. TNG failed to provide Plaintiff with a written statement setting forth the reasons for his termination under Correction Law § 754, in light of the factors in §§ 752 and 753.

84. As a result of TNG's conduct, Plaintiff was deprived of his rights, was prevented from timely and effectively contesting the adverse, discriminatory action, was unlawfully terminated, lost past and future earnings and employment benefits, and suffered emotional injuries.

85. Plaintiff is entitled to the maximum damages allowable under the NYSHRL, including compensatory damages, punitive damages, and attorneys' fees and costs.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. An award of backpay, front pay, and compensatory damages;

B. An award of actual, real, and/or statutory damages for Defendant's willful or negligent conduct;

C. An award of punitive damages;

D. An award of attorneys' fees and costs;

E. Pre-judgment and post-judgment interest as provided by law;

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: White Plains, New York
July 22, 2021

Jane E. Lippman
**FILIPPATOS PLLC**
Attorney for Plaintiff
199 Main Street, Suite 800
White Plains, NY 10601
Tel: 914-984-1111
Fax: 914-984-1111
jlippman@filippatoslaw.com

By: /s/ *Jane E. Lippman*
Jane E. Lippman (JL7461)